OPINION OF THE COURT
Carolyn E. Demarest, J.
In this proceeding to wind up the affairs of Lowbet Realty Corp. (Lowbet), petitioner Shau Chung Hu moves, by order to show cause, pursuant to Business Corporation Law § 1107, to amend his petition, seeking court supervision of the liquidation of respondent corporation upon its dissolution pursuant to Business Corporation Law § 1008, to include claims arising from the purportedly fraudulent sale of the building located at 973 44th Street, Brooklyn, New York (the property), Lowbet’s sole asset; pursuant to CPLR 401, to join proposed respondents 973 44th Street Realty LLC (973), Philip O’Hara Associates (POA) a/a/f Westcor Land Title Insurance Company (Westcor) (collectively, the title respondents), and Bay Shine Management Company and Ray Chen (collectively, Bay Shine); and, pursuant to CPLR 408, for discovery regarding the sale of the property.
Background
On or about January 1, 1980, petitioner purchased all 200 authorized and outstanding shares of Lowbet, a holding corporation whose sole asset is the property, a four-story residential apartment building with 19 units that was appraised, as of July 15, 2011, to have a value of $1,700,000. In 1985, petitioner married respondent Margaret Liu (Liu), who thereafter obtained 50 shares of Lowbet, constituting a 25% interest in the corpora *593 tion. The couple separated in 1995, and petitioner has since resided in China while Liu has resided at the property and exercised full control over Lowbet. Petitioner claims that Liu has dissipated the corporation’s assets and diverted corporate income to herself.
By notice dated May 30, 2006, petitioner called a special meeting on August 1, 2006 to elect directors, pursuant to Business Corporation Law § 603, which Liu failed to attend and during which petitioner and Zong Hu were named the sole directors and officers of Lowbet. Petitioner claims that, as a result of this meeting, Liu initiated á divorce action against petitioner, in which the court granted a temporary restraining order barring either spouse from dissipating, transferring, or encumbering Lowbet’s assets or their interest in the corporation (see Liu v Hu, Sup Ct, Kings County, Feb. 16, 2007, Krauss, J., index No. 21419/06). Liu violated this order by paying her own expenses and counsel fees from Lowbet’s account and was sanctioned by the court (see Liu v Hu, Sup Ct, Kangs County, Sept. 18, 2008, Adams, J., index No. 21419/06). By order dated July 21, 2011, the divorce action was dismissed due to Liu’s failure to appear at the trial.
By order to show cause dated October 5, 2011, petitioner commenced the instant proceeding seeking appointment of a referee, pursuant to Business Corporation Law § 1108, to wind up the affairs and sell the assets of Lowbet; for access to, and appointment of an accountant to inspect, Lowbet’s books and records to determine whether and to what extent Liu dissipated the corporation’s assets; pursuant to Business Corporation Law § 1115, to restrain Liu from operating, managing, or transacting business on behalf of Lowbet; and for a declaration that petitioner owns 75% of Lowbet’s shares. Lowbet was dissolved by proclamation of the Secretary of State pursuant to Tax Law § 203-a on December 27, 2000. In the order to show cause, the court granted a temporary restraining order directing that “pending the hearing of the motion, the status quo shall be maintained in that the management company currently managing the property [Bay Shine] shall continue to do so” and “neither party shall. . . participate in the management of the realty or remove assets of the corporation without further direction by a Justice of this Court.” Liu interposed an answer dated January 31, 2012, requesting that the court impose a constructive trust granting her 100% of the shares of Lowbet. On April 10, 2012, the court held a hearing on the petition, which Liu failed *594 to attend, found, upon inquest, that petitioner owns 75% of Lowbet’s shares, and struck Liu’s answer on default.[1]
By deed dated February 22, 2012, Liu, purporting to act on Lowbet’s behalf, in violation of the court’s order, sold the property to proposed respondent 973 for $1,600,000. As of February 15, 2012, when proposed respondent Bay Shine resigned as managing agent of the property, Liu had acquired possession of all of the keys to the property and Lowbet’s books and records, also in contravention of this court’s October 5, 2011 order.[2] At the closing, proposed respondent POA appeared and issued a title insurance policy to 973 through proposed respondent West-cor. Both POA and Westcor state that they searched the public records and found no notice of pendency filed against the property or any other document that would provide constructive notice of the instant proceeding. Petitioner contends that all parties to the transaction should have checked the public records for litigation concerning Lowbet, particularly in light of the corporation’s dissolved status at the time of the transaction. POA admits that it was aware that Lowbet had been dissolved, but asserts that “it is a common occurrence for a dissolved corporation, under such circumstances to convey, as occurred here, when the ‘corporation’ is appearing by what appeared to be all of its shareholders.”
On or about April 20, 2012, upon discovering that the property had been sold, petitioner sought to obtain, from counsel for both 973 and Lowbet in connection with the sale and from the title respondents, copies of the closing documents and checks exchanged. Petitioner’s request was denied by all parties, which claimed that the documents are privileged. Petitioner argues that these documents, which would uncover “essential facts surrounding Ms. Liu’s fraud,” are “not privileged” and that he has “not been provided with any valid reason that any of them are.” Petitioner also previously sought discovery from Bay Shine, via subpoena dated November 22, 2011, in which he requested Lowbet’s corporate filings, books and records, sum *595 maries of payments to Bay Shine, bank statements, checks, and deposit and withdrawal slips. Bay Shine did not comply with petitioner’s subpoena.
On April 30, 2012, upon petitioner’s motion by order to show cause, Liu was held in contempt for violating the October 5, 2011 temporary restraining order. On May 10, 2012, the court issued a warrant for Liu’s arrest. Liu has left the country and has never appeared before the court.[3] Despite petitioner’s 75% interest in Lowbet, Liu has not distributed to petitioner any portion of the $1,600,000 that she received in consideration for transfer of the property to 973.
Petitioner brought the instant motion, by order to show cause dated May 30, 2012, to amend the petition to include claims arising from the sale of the property; pursuant to CPLR 401, for leave to join proposed respondents 973, POA as agent for West-cor,[4] and Bay Shine (collectively, proposed respondents); and, pursuant to CPLR 408, for leave to seek discovery from 973’s counsel, Lowbet’s real estate counsel, the title respondents, and Bay Shine of closing documents and checks exchanged in connection with the sale of the property. As against 973, petitioner’s proposed amended petition adds three claims: rescission of the sale of the property pursuant to Business Corporation Law § 1114, an accounting pursuant to Business Corporation Law § 1114, and for rescission of the sale of the property predicated on fraud. As against the title respondents, petitioner seeks to add a claim sounding in negligence for “failing to discover Ms. Liu’s fraud.” As against Bay Shine, the amended petition would add alternative claims sounding in breach of fiduciary duty and negligence in facilitating the fraudulent transfer of the property, in violation of the court’s temporary restraining order, by providing to Liu the keys to the property and Lowbet’s books and records. Petitioner also seeks to add damages claims against Liu for fraudulent conveyance, conversion, breach of fiduciary *596 duty, and unjust enrichment. As Liu has failed to appear or otherwise oppose the instant motion, petitioner’s amendment to include these claims against her is granted on default.
Discussion
In this motion, petitioner seeks to add 973, the title respondents, and Bay Shine as parties to this dissolution proceeding. Pursuant to CPLR 1002 (b), joinder of defendants in a single action, or respondents in a special proceeding, is permitted where “there is asserted any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences” and “any common question of law or fact would arise.” In the case at bar, petitioner seeks to assert claims arising from the purportedly fraudulent sale of Lowbet’s sole asset while this proceeding was pending before the court. Contrary to the proposed respondents’ arguments, it is clear that petitioner’s proposed claims regarding the sale of the property arise from the same series of transactions as, and share a common nucleus of operative fact with, the instant proceeding.
Pursuant to CPLR 3025 (b), “[a] party may amend his or her pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court”; such leave “shall be freely given upon such terms as may be just” (see also CPLR 402 [stating that the petition in a special proceeding “shall comply with the requirements for a complaint in an action”]). “Leave to amend a pleading should be freely granted” where “the proposed amendment is not palpably insufficient or patently devoid of merit, and will not prejudice or surprise the opposing party” (Bolanowski v Trustees of Columbia Univ. in City ofN.Y., 21 AD3d 340, 341 [2d Dept 2005]; see G.K. Alan Assoc., Inc. v Lazzari, 44 AD3d 95, 99 [2d Dept 2007]). “In cases where the proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit, leave should be denied” (Norman v Ferrara, 107 AD2d 739, 740 [2d Dept 1985]). Petitioner moved for leave to amend his petition promptly after learning about the sale of the property, and proposed respondents do not state sufficient reasons why they would be prejudiced by the amendment. Accordingly, petitioner should be granted leave to amend if his claims are not facially devoid of merit.
Proposed respondent 973 argues that petitioner cannot join the additional claims in this special proceeding but must instead initiate a plenary action. CPLR 103 (b) mandates that *597 all civil claims “be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized.” 973 contends that “petitioner is attempting to bootstrap onto a corporate dissolution ‘special proceeding’ what is quintessentially a ‘quiet title’ action” under RPAPL 1501. However, petitioner correctly asserts that, pursuant to RPAPL 1551, this remedy is not exclusive and thus does not preclude relief pursuant to Business Corporation Law § 1114. Matter of Griffin v Panzarin (305 AD2d 601 [2d Dept 2003]), upon which 973 relies, is inapposite in that, in that case, petitioner had improperly commenced a special proceeding seeking the discharge of mortgages pursuant to RPAPL 1921 and 1501, whereas the instant special proceeding was properly commenced pursuant to the Business Corporation Law to dissolve and liquidate a corporation and 973’s potential liability arose during that proceeding under Business Corporation Law § 1114 as a result of a violation of a court order. Matter of Schramm (107 Misc 2d 393, 395 [Sup Ct, NY County 1980]), cited by petitioner, in which the Supreme Court allowed a corporate shareholder in a dissolution proceeding to move, pursuant to Business Corporation Law § 1114, to set aside a consent judgment of eviction entered while the proceeding was pending, is directly on point. Justice Evans held that the statutory scheme embodied in article 11 of the Business Corporation Law gives the court supervising a dissolution proceeding “power pendente lite to preserve the corporate estate” and that “logic and the public interest in judicial economy dictate that interrelated issues” regarding the dissolution “be adjudicated by the same court so as to expeditiously produce a just and coherent result” (id.). 973 in fact acknowledges that “a court supervising a corporate dissolution may decide competing claims to property transferred in derogation of its order.” Therefore, petitioner’s request for relief from the allegedly fraudulent transfer of Lowbet’s sole asset during the pendency of the proceeding, pursuant to Business Corporation Law § 1114, falls within the parameters of the instant proceeding.
Business Corporation Law § 1114 states that the sale of
“any property of a corporation made, without prior approval of the court, after service upon the corporation of ... an order to show cause in a special proceeding, under this article in payment of or as security for an existing or prior debt or for any other or for no consideration . . . shall be void as against *598 such persons and to such extent, if any, as the court shall determine.”
973 correctly contends that Business Corporation Law § 1114 does not render the sale of the property void ab initio but instead makes it voidable at the discretion of the court (see Matter of Schramm, 107 Misc 2d at 396 [holding that, because of “the manifest intent of the statutory scheme, as well as additional (permissive) language” of the statute, the application of Business Corporation Law § 1114 is discretionary]). 973 argues that, because Liu had apparent authority to sell the property, and because it was a bona fide purchaser for value, the court should decline to allow petitioner to seek rescission of the sale. However, pursuant to Business Corporation Law § 909 (b), an extraordinary transaction, such as that herein, to sell “substantially all of the assets of the corporation” requires the approval of two thirds of shareholders, and such provision “precludes any claim of apparent authority since those who deal with corporations are bound by the statutory limitations on the authority of corporate officers” (Bouton v Thomas Bros. Sales Corp., 179 AD2d 612, 613 [2d Dept 1992], quoting Vig v Deka Realty Corp., 143 AD2d 185, 187 [2d Dept 1988]). Because Liu owned only 25% of Lowbet’s shares,[5] she did not have plenary authority, or apparent authority, to sell the property on Low-bet’s behalf. As petitioner correctly asserts, a deed that is void due to lack of authority for the transfer cannot convey title to property, even to a good faith purchaser for value (see ABN AMRO Mtge. Group, Inc. v Stephens, 91 AD3d 801, 803 [2d Dept 2012]; see also LaSalle Bank Natl. Assn. v Ally, 39 AD3d 597, 600 [2d Dept 2007]). Moreover, Liu’s conveyance of the property was in clear derogation of the court’s order. Therefore, petitioner’s claims for rescission of the sale of the property, pursuant to Business Corporation Law § 1114 and predicated on Liu’s fraud, are not devoid of merit. As 973 is a necessary party to the litigation of such claim, petitioner is granted leave to amend his petition to seek such relief. As 973 does not appear to challenge the addition of a claim for an accounting, petitioner is also permitted to add that claim to his petition.
The title respondents contend, in opposition to petitioner’s motion for leave to amend, that they cannot be liable to petitioner, or to Lowbet, for negligence because they had no *599 privity with petitioner or the corporation and thus owed them no duty, and because they did not cause any damages that petitioner suffered. Petitioner claims that a title company or issuing agent can be liable to a third party, despite the lack of privity, where there is evidence of fraud, collusion, or other special circumstances. However, there Eire no fraud allegations against the title respondents. The only cause of action alleged against the title respondents is negligence. “To prove a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty of care owed to the plaintiff, a breach of that duty, and that the breach of such duty was a proximate cause of his or her injuries” (Miglino v Bally Total Fitness of Greater N.Y., Inc., 92 AD3d 148, 159 [2d Dept 2011]). Petitioner claims that the title respondents should not have allowed Liu to sell the property to 973 and that their failure to discover Liu’s fraud caused him damages. The title respondents correctly argue, however, that, because they were contracted exclusively to provide title insurance to 973, they were not in privity with petitioner or Lowbet and thus owed no duty of care to petitioner. “[A] title company hired by one party is not, absent evidence of fraud, collusion, or other special circumstEmces, subject to suit for negligent performance by one other than the party who contracted for its services” (Calamari v Grace, 98 AD2d 74, 83 [2d Dept 1983]; see Sabo v Alan B. Brill, P.C., 25 AD3d 420, 421 [1st Dept 2006]; see also Goodman v Title Guar. & Trust Co., 11 AD2d 1003 [1st Dept I960]). It may be that 973 will ultimately have a claim against the title respondents, but petitioner has stated no cause of action against them. The motion to amend the petition to add POA and Westcor as respondents is denied.
Bay Shine, in opposition to petitioner’s motion for leave to amend, argues that petitioner’s breach of fiduciEiry duty and negligence claims are improperly pleaded as individual rather than derivative claims. Bay Shine also contends that petitioner’s breach of fiduciary duty claim lacks merit because it was not a breach to return Lowbet’s books, records, and keys to a shareholder and petitioner did not plead that it was aware of the sale. Such argument is addressed to the factual merits, however, and does not preclude the amendment of the pleading. In reply, petitioner claims that Bay Shine is liable because its actions substantially aided and abetted Liu’s breach of fiduciary duty, and because it resigned its role as managing agent with full knowledge of and in contravention of the court’s temporary restraining order. Petitioner has not alleged aiding and abetting *600 a breach of fiduciary duty by Liu, but has alleged a breach of duty owed directly to himself. Bay Shine does not appear to contest petitioner’s proposed negligence claim. Petitioner further argues that, even if he improperly pleaded a derivative claim as a direct claim, the court has the authority to convert such claim without the necessity of a further motion.
“In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant’s misconduct” (Fitzpatrick House III, LLC v Neighborhood Youth & Family Servs., 55 AD3d 664, 664 [2d Dept 2008], quoting Kurtzman v Bergstol, 40 AD3d 588, 590 [2d Dept 2007]).
“[0]ne who aids and abets a breach of a fiduciary duty is liable for that breach as well, even if he or she had no independent fiduciary obligation to the allegedly injured party, if the alleged aider and abettor rendered ‘substantial assistance’ to the fiduciary in the course of effecting the alleged breaches of duty” (Velazquez v Decaudin, 49 AD3d 712, 716 [2d Dept 2008], quoting Caprer v Nussbaum, 36 AD3d 176, 193 [2d Dept 2006]).
Petitioner argues that Bay Shine substantially aided and abetted Liu’s breach of fiduciary duty by providing Liu with keys to the property and Lowbet’s books and records in violation of the court’s temporary restraining order. Bay Shine acknowledges that it was served with the temporary restraining order, but claims that the order was vague and did not specially require that it continue to manage the property. The court notes, however, that the October 5, 2011 order specifies that “the management company currently managing the property shall continue to do so,” clearly referring to Bay Shine.[6] Bay Shine, as managing agent, owed a fiduciary duty to Lowbet. Because *601 Bay Shine was aware of the instant proceeding, it knew or should have known that its actions would provide material assistance to Liu in breaching her fiduciary duty to the corporation and to petitioner.[7] The court declines to modify the proposed pleading but grants leave to petitioner, in serving the amended petition, to add or modify allegations against Bay Shine as deemed necessary.
Although proposed respondents insist that petitioner’s negligence and breach of fiduciary duty claims may not be brought by petition in a special proceeding, they cite to no authority mandating a plenary proceeding[8] (cf. Klauss v MacDonald, 30 Misc 3d 1221 [A], 2011 NY Slip Op 50155[U], *8 [Sup Ct, Suffolk County 2011] [converting the “ancillary claims set forth in (petitioner’s) pleading,” including breach of contract, unjust enrichment, breach of fiduciary duty, and fraud, to a complaint, pursuant to CPLR 103 (c), only after dismissing petitioner’s dissolution claim under Business Corporation Law § 1104-a for lack of standing]). Petitioner’s claims against Bay Shine arise from the sale of Lowbet’s sole asset in violation of the court’s order in this proceeding and thus would fall within the court’s authority to preserve Lowbet’s corporate estate (see Matter of Schramm, 107 Misc 2d at 395). Moreover, requiring a separate action would “produce additional and unnecessary formalistic practice, since the matters are subject to consolidation or joint trial” (id. at 395-396). Therefore, petitioner is not barred from asserting these supplemental claims within this special proceeding.
Finally, petitioner requests discovery. Generally, in a special proceeding, “[l]eave of court shall be required for disclosure” (CPLR 408).
“Because discovery tends to prolong a case, and is therefore inconsistent with the summary nature of a special proceeding, discovery is granted only where it is demonstrated that there is need for such relief. *602 When leave of court is given, discovery takes place pursuant to CPLR 3101 (a), which provides generally that ‘[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action’ ” (Matter of Town of Pleasant Val. v New York State Bd. of Real Prop. Servs., 253 AD2d 8, 15 [2d Dept 1999] [citation omitted]; see Plaza Operating Partners v IRM [U.S.A.] Inc., 143 Misc 2d 22, 23-24 [Civ Ct, NY County 1989]).
Petitioner seeks disclosure, from Lowbet’s counsel and 973’s counsel in connection with the sale of the property, and from the title respondents, of checks exchanged at the closing; closing documents and other documents otherwise exchanged in connection with the sale of the property; Lowbet’s articles of incorporation, bylaws, and documents evidencing corporate status; and mortgage documents. Petitioner further requests that the court order Bay Shine to comply with its subpoena to produce Lowbet’s corporate books and records, financial records, summaries of payments to Bay Shine, bank statements, checks, and deposit and withdrawal slips. Furthermore, petitioner seeks to depose 973, the title respondents, and Low-bet’s counsel in connection with the sale of the property. As Liu sold the property in violation of the court’s order, and petitioner had no knowledge of the sale, these documents are clearly necessary for petitioner to prosecute his claims and to recover the portion of the corporate estate that Liu dissipated. Moreover, because Liu has left the country and has never personally appeared before the court in connection with the instant matter, the argument that petitioner can obtain all the documents that he requests from Liu is specious. However, with the amendment of the petition and the addition of 973 as a party respondent, petitioner will be able to access the requested documents through a party. As the motion to join the title respondents is denied, petitioner’s motion regarding discovery is granted only to the extent that leave is granted to serve appropriate demands upon all parties following service of the amended petition, and upon the title respondents as nonparties, only to the extent such demands are not otherwise satisfied. Bay Shine is directed to promptly respond to petitioner’s subpoena as it has not moved to quash or for a protective order.
Conclusion
Accordingly, petitioner’s motion for leave to join 973 as a respondent and assert claims against it for rescission of the sale of *603 the property pursuant to Business Corporation Law § 1114 and predicated upon fraud and for an accounting is granted. Petitioner’s motion to add additional claims against Liu arising from the purportedly fraudulent sale of the property is also granted. Petitioner is further granted leave to join Bay Shine Management Company and Ray Chen as respondents and to amend his proposed claims against them as deemed necessary. However, petitioner’s motion is denied to the extent that he seeks to join as respondents and assert a negligence claim against POA and Westcor.
Petitioner’s motion for discovery is granted to the extent that Bay Shine is directed to promptly respond to petitioner’s subpoena. Petitioner is granted leave, subsequent to service of its amended petition, to serve proper discovery demands upon 973 as a party. Petitioner is also granted leave to serve discovery demands upon the title respondents, as nonparties, only to the extent that his demands from parties to this proceeding are not satisfied.

. Pursuant to Business Corporation Law §§ 1108 and 1113, the court appointed Michael Mondschein, Esq. temporary receiver of the property on January 9, 2012. On February 1, 2012, Mr. Mondschein’s application to be relieved was granted, and the Honorable William Thompson was appointed permanent receiver of the property on April 16, 2012.

. While Bay Shine was not originally a party to this proceeding, it admits that it was served with the temporary restraining order requiring it to continue to manage the property. Although Bay Shine disputes that it was bound in any way by such order, it did not seek relief through this court.

. Liu has never personally appeared before the court in connection with the instant proceeding. Her counsel of record, Paul D. Creinis, Esq., who admitted at the April 30, 2012 hearing that he had never met his client in person, was relieved upon motion to the court on July 11, 2012. During the pendency of the instant motion, Liu has sent several communications to the court, indicating that she is fully informed of the proceedings that have occurred. Such communications are not relevant, however, to the instant motion, which Liu has not opposed.

. The title respondents, in their opposition papers, contend that petitioner improperly conflated POA and Westcor as a single respondent, but that they are separate entities with different roles in the issuance of 973’s title policy in connection with the sale of the property.

. 973 challenges this adjudication by this court as not binding upon it. However, this determination was rendered following inquest and is the law of the case. 973 will have standing to raise its own defenses following joinder, but its substantive, factual defenses need not be addressed at this time.

. The eases that Bay Shine cites in support of its contention that the temporary restraining order “does not apply to Bayshine [sic] and does not constitute a clear and unequivocal mandate of the Court directed at Bayshine [sic]” concern the burden of proof upon a motion for civil contempt (see Collins v Telcoa Intl. Corp., 86 AD3d 549, 550 [2d Dept 2011]; Muwwakkil v Metropolitan Suburban Bus Auth., 289 AD2d 309 [2d Dept 2001]). As Bay Shine had actual knowledge of the order requiring it to continue as managing agent pending further order of the court, it was bound by the temporary restraining order (Ricatto v Ricatto, 4 AD3d 514, 516 [2d Dept 2004] [“(N)onparties ‘may be bound by an injunction if they have knowledge of it, provided they are servants or agents of the defendants, or act in collusion or combination with them’ ”], quoting Rigas v Livingston, 178 NY 20, 24 [1904]).

. To the extent that petitioner improperly pleads a claim for relief individually and not derivatively on behalf of Lowbet, petitioner is correct in noting that such mistake in pleading is not grounds for denial of leave to amend; rather, the court can convert individual claims to derivative claims where necessary (see Matter of Maki v Estate of Ziehm, 55 AD2d 454, 457 [3d Dept 1977]).

. Instead, proposed respondents argue that such claims would be better suited to a plenary action because of the need for extensive discovery. Discovery is, however, available in the context of a special proceeding as well (CPLR 408).